ALFONSO E. DELGADO, Plaintiff and Appellant, v. AGUSTINA MONROIG, Defendant and Appellee.

No. 7774. Argued March 14, 1940.—Decided July 26, 1940.

Dubón & Ochoteco for appellant. Tomás Bernardini de la Huerta for appellee.

Mr. Justice Wolf delivered the opinion of the court.

The plaintiff and the defendant were married on the 14th of December 1935, and the matrimonial society between them arose at that date. Some time thereafter the wife began a suit for divorce. After the suit was begun, on July 29, 1937, the parties signed a private contract, the essential clauses of which are as follows:

"*Fifth:* The parties agree, by mutual accord and the present document, that in case the suit for divorce pending before the District Court of Bayamón, as it has been stated, should prevail, and in case judgment is rendered dissolving the matrimonial bonds between them, and the judgment is final, the matrimonial society which exists between the parties be liquidated as follows:

"1. That the business known by the name of 'Farmacia Olimpo' aforesaid shall be adjudicated exclusively to Alfonso E. Delgado, with the obligation on his part to pay all the debts owing by said pharmaceutical establishment up to the moment of filing the complaint in the aforesaid divorce proceeding.

"That Doña Agustina Monroig will pay to the other party, Mr. Alfonso E. Delgado, in specie and immediately after the judgment of divorce which may lie is final, as has been said, the sum of Three Thousand Dollars ($3,000.00) which will be used to cancel the debts of the aforesaid drugstore business, owing at the time of the filing of the repeatedly aforesaid complaint.

"3. That wtih the exception of the debts owing from the 'Farmacia Olimpo' which obligation has been assumed by the party Delgado, according to the preceding first paragraph, all the other debts and obligations which pertain to the conjugal partnership will be entirely paid by the other party, doña Agustina Monroig, with the exception of those which may have been or are incurred, on any account, besides the drugstore, by Mr. Delgado in his own name, which will be paid by him.

"4. That in consideration of the adjudications made in favor of Mr. Delgado, of the drugstore and the cash, in the manner aforesaid, he will renounce to all right, action, or interest that he has or may have in any property of any nature, of the conjugal partnership or solely of Mrs. Monroig, with the exception of the drugstore and the cash, as has been settled by this document.

"5. That Doña Agustina Monroig will renounce any claim she has or may have against Mr. Delgado, and he will renounce any claim he has or may have against the other party, Mrs. Agustina Monroig, once the proper document transferring the 'Farmacia Olimpo' is executed in his favor and the aforesaid Three Thousand Dollars in specie is paid, with the exception of those claims that may arise if any of the parties fails to fulfill any of the conditions of this contract or of that which, in conclusion, is executed upon the liquidation of the conjugal partnership that at present, and by operation of law, exists between the parties.

6. It is stated, in an express and definite manner, that this agreement in no way should be interpreted, from its face and spirit, that any of the parties waives any right which may assist them in the pending divorce suit which is mentioned in the first paragraph of the explanatory part of this document, which right or rights the party benefited thereby will be free to exercise without any limitation."

The wife obtained the judgment of divorce and after the judgment became final *(firme)*, the plaintiff filed a suit called "Specific Performance," which ends as follows:

"By reason of the above, he prays the court to render judgment in this case, by which the conjugal partnership which existed between the parties be declared liquidated upon the basis, stipulations, and conditions contained in the contract executed by the plaintiff and the defendant which was incorporated in the document of July 29, 1937, to which the complaint refers, and in consequence thereof the defendant be ordered to pay to the plaintiff the sum of $3,000 to which she became bound by the aforesaid contract, together with interest thereon at the legal rate from this date until total payment, and the costs of this suit, including attorney's fees."

The defendant filed a demurrer on the ground that the complaint shows no cause of action. From the opinion it appears that the demurrer was specifically based on five different grounds contained in a brief filed in the district court. The court overruled three of them and sustained the demurrer on the last two, and gave judgment for the defendant. A reconsideration was denied.

The opinion of the court was based on sections 1297 and 1316 of the Civil Code (1930 ed.) which provide:

"Section 1297. This partnership can not be renounced during the marriage, except in case of judicial separation.

"When the renunciation should take place by reason of a separation, or after the marriage has been dissolved or annulled, said renunciation shall be included in a public instrument, and the creditors shall have the right granted them in section 955."

"Section 1316. Upon the dissolution of the partnership an inventory shall immediately be made; but the same shall not be required for the liquidation:

"1. When, after the partnership has been dissolved, one of the spouses or his or her legal representatives have at the proper time renounced its effects and consequences.

"2. When the separation of the property may have preceded the dissolution of the partnership.

"3. In the case to which the second paragraph of the preceding section refers.

"In case of renunciation, the right granted creditors by section 955 shall always be reserved."

The court also cites from Manresa, *Comentarios al Código Civil,* volume 9, page 551 *et seq.*

The appellant maintains that the agreement between the parties was a promise of a contract. The Civil Code provides for certain cases where a promise for a contract may prevail but as we read them there is always cases where the principal contract itself would have been available to the parties at the time the contract was made. This is to say, a husband and wife can make a promise to do anything during marriage that otherwise they were entitled to do and so might other parties. To attempt to transfer to the field of a promise to perform a contract from the field of contracts in themselves it seems to us is merely a change in nomenclature. If a contract may not be made during the matrimonial society an agreement to carry into effect a contract after the marriage is dissolved is susceptible to exactly the same objection.

The appellant assigns one error as follows:

"The court erred in deciding that the complaint in this case does not state facts sufficient to constitute a cause of action."

He supports it with the following contentions:

"1. That the contract in issue does not violate the principles that regulate the régime of the matrimonial partnership;

"2. That conceding that it did violate it, the defendant, having accepted the benefits of the contract, is estopped to deny its validity."

The appellant cited to the lower court and again on appeal, the case of *De la Rama* v. *De la Rama*, 7 Philippine 745. The opinion cited was rendered after the case had been heard on appeal by the Supreme Court of the United States and remanded. The specific part of the opinion reads:

"It was claimed by the defendant, in his brief in his original appeal to this court in support of this assignment of error, that it was not proper to settle the affairs of the conjugal partnership in the divorce proceeding, and that no such settlement of a conjugal partnership could ever be made until there had been a final judgment ordering the divorce, from which no appeal had been taken, or as to which the time to appeal had expired, and in his argument in this court in the motion presented on the 2d of November, 1906, he repeats the same claim.

"In our opinion, however, this assignment of error was disposed of by the decision of the Supreme Court of the United States. As was said in that decision, the jurisdiction of that court depended entirely upon that part of the judgment of the Court of First Instance which directed the payment of 81,000 pesos. If the Court of First Instance had no jurisdiction to make any order for the payment of money in a divorce proceeding, that part of the judgment would have to be eliminated. In taking jurisdiction of the case the Supreme Court of the United States necessarily held that a liquidation of the affairs of the conjugal partnership could be had in a divorce proceeding. The fifth assignment of error, therefore, cannot now be urged by the defendant." (7 Philippine 748, 749).

It is evident that there was a different situation in that case, and that the division of property took place in the

same instance or in contemplation of law when the expiration already existed.

Another case cited was *Palomar Baldovi* v. *Sarte*, 36 Philippine 550. In that case husband and wife executed a contract during marriage while a divorce suit was pending. By it they divided their property and the wife assumed certain debts to be paid only in case a judgment in divorce was obtained. The Supreme Court of the Philippine Islands said:

"Article 1432 of the Civil Code provides:

"'In the absence of a specific declaration in the marriage contract, the separation of the property of the spouses, during the marriage, shall not take place except by virtue of a judicial decree, except in the case prescribed by article 50.'

"By the clear provisions of this article it is demonstrated that the contract of separation stipulated between the husband and wife Rodolfo G. Tuyet and Manuela Sarte can produce no legal effect, nor, by virtue thereof, can the defendant Sarte be obliged to fulfill the stipulation made between them until a judgment of divorce and separation of property shall have been rendered in proceedings brought by the husband, for the said obligation on the part of the wife is subject to the condition of the tenth clause of the instrument Exhibit A." (36 Philippine 555.)

As to this case and the previous one the district judge says in his order denying a motion for reconsideration:

"The defendant maintains in his motion for reconsideration that we have infringed the two judgments of the Supreme Court of the Philippine Islands that he cites. To that imputation we must answer that the jurisprudence of the Philippines is not controlling in this jurisdiction, and that we should follow it only when the reasoning to support it convinces our mind that it is correct. We have examined the two judgments aforesaid, and with the greatest respect for said high Tribunal, we are not convinced of the correctness of their conclusions. Therefore, we are not bound to yield our criterion to that expressed by that Court."

Especially applicable is the judgment of the Supreme Court of Spain of December 12, 1899. (88 *Jur. Civ.* 520.)

The facts of that case are as follows:

Cayetano Buquerín, a widower, married María Palomar on February 7, 1872. They executed a deed wherein they established the amounts that they had brought to the community, and the estate which belonged to the children by the first marriage. Some time later the husband sued the wife to decide the question whether certain payments made by the husband should be charged to the wife's private estate. This suit was settled out of court by the parties and they executed a deed to that effect on September 26, 1880. When Buquerín died, his wife attacked the liquidation made of the estate. The court of first instance declared the contract of September 26, 1880, to be null and void. The heirs appealed. The statement of the Supreme Court of Spain was:

"Whereas, Don Julián Buquerín Bartolomé has filed a writ of cassation for infraction of law, based on the first subdivision of section 1692 of the Law of Civil Procedure, and charges: that the judgment from which he appeals, in holding the contract of compromise of September 26, 1880, to be null and void, applied erroneously section 1458 of the Civil Code (1347 of Puerto Rico) which provides that husband and wife cannot sell property to each other, except when the separation of property has been agreed to or when there is a judicial separation thereof, as authorized by Charter 6, Title III, Fourth Book of said Code; because by that deed Don Cayetano Buquerín and Doña María Palomar had not sold any property, but to avoid any question, Doña María had declared the expenses had with her children, so as not to prejudice his children, but had not transferred, encumbered, or sold to him any property or rights of any kind; and that also that it applied erroneously to the aforesaid contract section 1811 of the Civil Code, because Don Cayetano Buquerín and Doña María Palomar had executed no compromise as to dower rights, nor had Doña María sold them to her husband, because she had confined herself to declaring the expenses incurred by her children, and authorized him to do the same with his.

"The case having been heard, Don Diego Montero de Espinosa, Judge, delivered the opinion of the Court.

"Whereas, in the judgment there is no infraction of section 1458 of the Civil Code (1347 of Puerto Rico) by undue application thereof, which is the first assignment of error, because although the deed of October 26, 1880, does not properly show a contract of sale between husband and wife, which is the one the execution of which that section forbids, there is no doubt that it is a contract of compromise, that requires, by its similarity and analogy to one of sale, the same requirements as to the capacity of the parties, and therefore is also included among those prohibited between man and wife;

"Whereas, section 1811 of the Civil Code, to which the second error refers, has been also correctly interpreted, because if the dowry, according to Section 1336, is constituted by the properties and rights that the wife contributes in this character at the time of marriage, and those delivered by Doña María Palomar at the time of her marriage became affected by the compromise embodied in the deed of October 26, 1880, it is clear that the latter had to do with the dower rights and properties expressly forbidden by the section invoked."

Section 1458 of the Spanish Civil Code is equal to section 1347 of our code (1930 ed.). It says:

"The husband and the wife can not mutually sell property to each other, except in case the separation of property has been agreed upon or when a judicial separation of the said property should have taken place, authorized in accordance with the provisions of Chapter V, Title III, of this book."

Commenting on that section Manresa says:

". . . it is indubitable that contracts between husband and wife that entail a change of system or any alteration in the régime of community property are of course null and void. (Manresa, *Comentarios al Código Civil*, Vol. 10, p. 92).

The then district judge, now Associate Justice De Jesús, quoted from Manresa, as follows:

"Section 1394 (equivalent to ours No. 1297), then, bears upon the renunciation of the ganancials acquired during the matrimonial society, and only permits it when it is known whether there are any: when the society has expired by any of the reasons expressed in section 1147 at the only time when the spouses have not just a

contingency but an acquired right upon the acquets, in case there are any in the matrimony.'' (9 Manresa, Civil Code, 551.)

  '' *     *     *     *     *     *     *

''According to the doctrine of the Code, as we have said, both husband and wife may renounce their matrimonial property, but only after the matrimonial society is finished.'' (Id., p. 553.)

In commenting on section 1420 of the Spanish Code (1316 of ours) Manresa has said:

''The section can not refer to a separation of the property by agreement, because once the community system is established, that separation, which is equivalent to an alteration of the régime during the marriage, has no legal force.'' (Manresa, op. cit. 9, p. 684.)

The appellant also cited the case of *Henna et al.* v. *Saurí & Subirá*, 22 P.R.R. 776. That case related to the execution of a contract with a condition, and did not involve the nullity *ab initio* of the contract.

As to the estoppel of the defendant to attack the contract, it can be said that she may have attempted to renounce or waive her rights but that the waiver is ineffective because the contract is null.

Section 4 of the Civil Code says:

''Acts executed contrary to the provisions of law are void except when the law preserves their validity.

''Rights granted by the laws may be renounced, provided such renunciation be not contrary to law, to public interest or public order, or prejudicial to the interest of a third person.''

The judgment appealed from should be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.